1  AZADIAN LAW GROUP, PC
   GEORGE S. AZADIAN (SBN 253342)
2  ANI AZADIAN (SBN 284007)
   707 Foothill Blvd., Suite 200
3  La Canada Flintridge, California 91011
   Ph:     (626) 449-4944
4  Fax:    (626) 628-1722
   Email: George@azadianlawgroup.com

5  Attorneys for Plaintiff,
6  ADRIANA SUAREZ TAPIA and the Proposed Class

7              **UNITED STATES DISTRICT COURT**

8            **SOUTHERN DISTRICT OF CALIFORNIA**

9  ADRIANA SUAREZ TAPIA, an            CASE NO. 20-cv-1950-MMA-JLB
10 individual on behalf of herself and all
   others similarly situated,           **CLASS ACTION**
11
                                        **PLAINTIFF'S UNOPPOSED NOTICE
12                                      OF MOTION AND MOTION FOR
                                        FINAL APPROVAL OF CLASS
13                          Plaintiff,  ACTION SETTLEMENT;
                                        MEMORANDUM OF POINTS AND
14      v.                              AUTHORITIES IN SUPPORT
                                        THEREOF**
15 FRONTWAVE CREDIT UNION, a
16 California corporation,              Hearing Information:
                                        Date:  July 29, 2021
17                         Defendant.   Time: 3:30 p.m.
                                        Dept.: 3D
18
19                                      [Filed concurrently with: (1) Notice of
                                        Unopposed Motion and Motion for
20                                      Award of Attorneys' Fees, Costs,
                                        Incentive Payment to Class
21                                      Representative; (2) Declaration of
                                        George S. Azadian, Esq.; (3)
22                                      Declaration of Adriana Suarez Tapia;
                                        (4) Declaration of Jeremiah Kincannon
23                                      Regarding Notice and Settlement
                                        Administration; and (5) [Proposed] Final
24                                      Judgment and Order Granting Final
                                        Approval]
25

26

27

28

## <u>NOTICE OF MOTION AND MOTION</u>

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 29, 2021 at 3:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 3D of the United States Courthouse, located at 221 West Broadway, San Diego, CA 92101, named Plaintiff and Class Representative Adriana Suarez Tapia ("Plaintiff"), on behalf of herself and the Settlement Class, will and hereby does move this Court for entry of an Order pursuant to Fed. R. Civ. Proc. 23(e) to:

1. Finally certifying the proposed Class for settlement purposes under Rule 23(e) of the Federal Rules of Civil Procedure;

2. Confirming Plaintiff's appointment as Class Representative for settlement purposes;

3. Confirming the appointment of Azadian Law Group, PC as Class Counsel for settlement purposes;

4. Granting final approval to the class action settlement based upon the terms set forth in the Class Action Settlement Agreement (the "Settlement" or "Settlement Agreement") as fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure; and

5. Entering final judgment in the form of the [Proposed] Final Judgment and Order Granting Final Approval filed herewith.

This motion is based on this notice of motion; the attached memorandum of points and authorities; the declaration of George S. Azadian, declaration of named Plaintiff and Class Representative Adriana Suarez Tapia; Declaration of Jeremiah Kincannon Regarding Notice and Settlement Administration; the [Proposed] Final Judgment and Order; the Settlement Agreement; the pleadings and other papers filed in this action; and on any further oral or documentary evidence or argument presented at the time of hearing.

-1-

1

2    Dated: June 25, 2021                Respectfully submitted,

3                                        AZADIAN LAW GROUP, PC

4                                        By: */s/ George S. Azadian*

5                                        GEORGE S. AZADIAN
                                         Attorneys for Plaintiff,
6                                        ADRIANA SUAREZ TAPIA and
                                         the Proposed Class

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

-2-

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# <u>TABLE OF CONTENTS</u>

I.       INTRODUCTION ...........................................................................................1

II.      BACKGROUND AND PROCEDURAL HISTORY ...........................................1

      A.     The Pleadings & Nature Of The Action ....................................................1

      B.     Discovery Taken By The Parties & The Early Neutral Evaluation
Conference ...............................................................................................2

      C.     Preliminary Approval................................................................................4

III.     THE SETTLEMENT .......................................................................................5

      A.     The Settlement Class & Released Claims...................................................5

      B.     The Settlement Payment & Distribution Plan.............................................6

IV.     NOTICE TO THE SETTLEMENT CLASS HAS BEEN SUCCESSFULLY
COMPLETED.........................................................................................................7

V.      NOTICE CLASS PARTICIPATION: NO REQUESTS FOR EXCLUSION &
NO OBJECTIONS..................................................................................................8

VI.     THE SETTLEMENT WARRANTS FINAL APPROVAL UNDER RULE 23....9

      A.     The Settlement Is Fair, Adequate, And Reasonable .................................10

      1.     The Strength Of Plaintiff's Case ............................................................10

      2.     Risk, Expense, And Complexity Of Further Litigation ............................14

      3.     Risk Of Obtaining And Maintaining Class Action Status ........................17

      4.     Settlement Amount Provides Realistic Value For Claims.........................18

      5.     Class Counsel Has Extensive Experience In Class Actions And Similar
Cases. 19

      6.     The Reaction Of The Class Members To The Settlement .........................20

VII.    CONCLUSION .............................................................................................20

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

1

**TABLE OF AUTHORITIES**

**CASES**

Aceves v. AutoZone Inc., Case No. 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016)...........................................................................................................18

Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ...................7

Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)................10

Cortez v. Purolator Air Filtration Products Co., 23 Cal. 4th 163 (2000) ..............12

Drew v. Equifax Info. Servs., 690 F.3d 1100, 1110 (9th Cir. 2012) .......................14

Dunleavy v. Nadler, 213 F.3d 454, 459 (9th Cir. 2000)..........................................19

Feist v. Petco Animal Supplies, Inc., Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal. 2018)....................................................................................................18

Franklin v. Kaypro Corp., 884 F.2d 1222, 1229 (9th Cir. 1989).............................9

Gilberg v. Cal. Check Cashing Stores, Ltd. Liab. Co., 913 F.3d 1169, 1176 (9th Cir. 2019).................................................................................................................11

Grigoryan v. Experian Info. Solutions, 84 F. Supp. 3d 1044, 1058 (C.D. Cal. 2014) ..................................................................................................................................14

In re First Capital Holdings Corp. Financial Prods., MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10, 1992) ...................................................................2

In re Heritage Bond Litig., Nos. 02-ML-1475 DT, CV 01-5752 DT (RCx), 2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................................................9

In re Uber FCRA Litig., 2017 WL 2806698 (N.D. Cal. June 29, 2017)................18

Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134 (2003) ................12

Mendoza v. United States, 623 F.2d 1338, 1352 (9th Cir. 1980).............................7

Merck v. Reynolds, 559 U.S. 633, 130 S. Ct. 1784, 1795-96 (2010).....................14

Morales v. Stevco, Inc., 2011 WL 5511767 (E.D. Cal. 2011) ..................................2

Nat'l Rural Telecomm. Coop. v. DirecTV, Inc., 221 F.R.D. 523, 527 (C.D. Cal. 2004) ........................................................................................................................19

Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004) ..........................................................................................................................9

Rhom v. Thumbtack, Inc., 2017 WL 4642409 (N.D. Cal. Oct. 17, 2017).............18

Ruiz v. Shamrock Foods Co., 2018 U.S. Dist. LEXIS 148929, fn. 6 (Cal. C.D. Aug. 22, 2018)..........................................................................................................14

Syed v. M-I, Ltd. Liab. Co., 853 F.3d 492, 504 (9th Cir. 2017) ............................11

Toure v. Amerigroup Corp., 2012 WL 1432302 (E.D. N.Y. 2012) .........................2

Viceral v. Mistras Grp., Inc., No. 15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. 2016) ................................................................................................................19

**STATUTES**

15 U.S.C. §§ 1681 et seq...................................................................................2, 5

Cal. Bus. & Prof. Code §§ 17200 et seq. ........................................................2, 5

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Cal. Civ. Code §§ 1785 <u>et seq</u>............................................................................2, 5

Cal. Civ. Code §§ 1786 <u>et seq</u>............................................................................2, 5

-iii-

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Plaintiff Adriana Suarez Tapia ("Plaintiff"), on behalf of herself and the proposed Class, respectfully seeks final approval of the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") entered into by Plaintiff and Defendant Frontwave Credit Union ("Defendant" and, together with Plaintiff, the "Parties").[1]

On April 9, 2021, this Court issued an Order granting preliminary approval of the Settlement, which also conditionally certified the Settlement Class, appointed Plaintiff's Counsel as Class Counsel, appointed Plaintiff as the Class Representative appointed Simpluris as the Settlement Administrator, and approved the notice plan set forth in the Settlement Agreement.

There are 465 Settlement Class Members and each Individual Settlement Payment is calculated to be approximately $99.64.  (See Declaration of Jeremiah Kincannon ("Kincannon Decl."), ¶ 11.)[2]

As detailed below and in the accompanying declarations, the comprehensive notice plan has been completed, there have been no objections, only one (1) requests for exclusion, and the settlement has been embraced by the Settlement Class as fair, adequate, and reasonable.

## II.    BACKGROUND AND PROCEDURAL HISTORY

### A. The Pleadings & Nature Of The Action

On October 2, 2020, Plaintiff filed this putative class action entitled, *Adriana Suarez Tapia v. Frontwave Credit Union*, Case No. 20-cv-1950-MMA-JLB, in the United States District Court for the Southern District of California

---

[1] For ease of reference and consistency, defined terms from the Settlement Agreement are utilized below and an index of defined terms is included as Section II.A of the Settlement Agreement.

[2] The actual amount received by the Settlement Class Members will be higher because only $1,088.74 in litigation costs are sought, while the Class Notice and calculations used to estimate the per Class Member recovery were based on $2,500 in litigation costs.

-1-

(the "Action").  Plaintiff alleges in the Complaint that Defendant's background check disclosure forms are not compliant with the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code §§ 1786 et seq., Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785 et seq., and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  (Declaration of George S. Azadian ("Azadian Decl."),  ¶ 3.)

On October 26, 2020, Defendant filed an Answer to the Complaint denying Plaintiff's allegations and asserting various affirmative defenses.  (Id. ¶ 4.)

**B. Discovery Taken By The Parties & The Early Neutral Evaluation Conference**

Counsel for the Parties held numerous conferences where the scope of formal discovery and of informal discovery for purposes of the Early Neutral Evaluation Conference were discussed.  (Id. ¶ 5.)

Following the Parties providing initial disclosures and informal discovery, on December 3, 2020, the Parties participated in the Early Neutral Evaluation Conference before the Honorable Magistrate Judge Jill L. Burkhardt.  The matter did not settle during the Early Neutral Evaluation Conference.  However, at the conclusion of the Early Neutral Evaluation Conference the Honorable Magistrate Judge Jill L. Burkhardt made a mediator's proposal, which was subsequently accepted by the Parties.[3]  (Id. ¶ 6.)

The Settlement was subject to the completion of confirmatory discovery, which has now been completed.  (Id. ¶ 7.)  This confirmatory discovery was in the

---

[3] In re First Capital Holdings Corp. Financial Prods., MDL No. 901, 1992 WL 226321 at *2 (C.D. Cal. June 10, 1992) ("[T]here is typically an initial presumption of fairness where the settlement was negotiated at arm's length."); see also Toure v. Amerigroup Corp., No. 10-cv-5391 RLM, 2012 WL 1432302, at *1 (E.D. N.Y. Aug. 6 2012) ("The assistance of an experienced mediator, Linda Singer, Esq., reinforces that the Settlement Agreement is non-collusive"); Morales v. Stevco, Inc., No.: 09-cv-00704 AWI, 2011 WL 5511767, at *11 (E.D. Cal. Nov. 10, 2011) (concluding that the class action settlement was not collusive because "[t]he parties utilized an impartial mediator".)

form of a declaration under penalty of perjury from Defendant's Chief Human Resources Officer and confirmed the key information that was relied upon for purposes of the Early Neutral Evaluation Conference, including:

1. The three different Consumer Reporting Agencies ("CRAs") used by Defendant to conduct preemployment background checks during the Class Period and the number of people who Defendant was able to determine, based on available records, had their background checks completed by each CRA as follows.

   a. Transunion: October 2015 - December 2018; 274 individuals;

   b. Experian: December 2018 - May 2019; 34 individuals; and

   c. A-Check Global: May 2019 - December 21, 2020; 158 individuals.

2. A true and correct copy of the different disclosure and authorization forms used by Defendant during the Class Period.

3. Facts related to Defendant's understanding and expectation that beginning in May 2019, applicants who received conditional offers of employment would be provided a link by A-Check allowing the applicants to access, review, and acknowledge the background check documents electronically.

4. Facts related to Defendant's expectation and understanding that background check reports would be run only after the applicant had electronically acknowledged the background check documents.

5. Unbeknownst to Defendant, due to a technical issue, the system was not set up for A-Check to provide applicants who received conditional offers of employment from Defendant with the link to access the background check documents.

6. It was not until Plaintiff made a request for records in September 2020 and Defendant reached out to A-Check to obtain copies of the background check documents that Defendant believed were provided to Plaintiff (and

-3-

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

which Defendant did not have direct access to) that Defendant learned that A-Check had not been providing such documents to applicants like Plaintiff who had received job offers from Defendant.

7. Upon discovering that applicants had not been receiving background check documents, Defendant immediately instructed A-Check to fix the issue and made sure that background check documents are provided to all applicants receiving a conditional offer of employment going forward.

8. As a result of the technical issue described above, and contrary to Defendant's expectation and understanding about the services it had signed up for with A-Check, no disclosures or other background check documents were provided to applicants who received conditional job offers from approximately May 2019 to September 22, 2020.

9. A-Check has confirmed that as of September 22, 2020, any applicant who received a conditional job offer has been provided with the requisite disclosures and other background check documents.

10. Defendant now has the ability to directly access documents provided by A-Check to applicants to ensure they are provided with all necessary documents.

(Id. ¶ 7.)

## C. **Preliminary Approval**

On April 9, 2021 this Court granted preliminary approval of the Settlement [Dkt. No. 18]. Now that the Class Notice process is complete, Plaintiff respectfully submits the Settlement for final approval.

-4-

### III.    THE SETTLEMENT

**A. The Settlement Class & Released Claims**

The Settlement Agreement was previously filed on February 24, 2021 in connection with the Motion for Preliminary Approval and for the convenience of the Court is also included as Exhibit A to concurrently-filed Azadian Decl.

The "Settlement Class" means all Class Members who did not timely opt-out of the settlement by submitting a proper Request for Exclusion.  (Class Action Settlement Agreement ("SA") § II.A.5, attached as Exhibit A to Azadian Decl.) "Class Member" means all persons residing in the United States who were the subject of a consumer report that was procured by Defendant (or that Defendant caused to be procured) on or after October 2, 2015 through the date of Preliminary Approval of this Agreement (April 9, 2021).  (SA § II.A.22.)  The "Class Period" means October 2, 2015 through the date of preliminary approval of the Settlement (April 9, 2021).  (SA § II.A.6.)

There are 465 Class Members and taking into account the one request for exclusion, there are 464 Settlement Class Members.  (Kincannon Decl. ¶ 11.)

The scope of the release for the Class is limited only to those claims that were brought by Plaintiff in this action related to facts alleged in the Action relating to the procurement of, use of, disclosure of intent to procure, or authorization to procure or use a consumer report, investigative consumer report, credit check, background check, criminal history report, reference check, or similar report for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 et seq., Investigative Consumer Reporting Agencies Act ("ICRAA"), Cal. Civ. Code §§ 1786 et seq., Consumer Credit Reporting Agencies Act ("CCRAA"), Cal. Civ. Code §§ 1785 et seq., and California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.  (SA § II.C.1.)

The named Plaintiff also has agreed to a broader release of all known or unknown claims, however, this broader release is limited only to the Plaintiff.  (SA § II.C.2.)

**B.**     **The Settlement Payment & Distribution Plan**

Through the Settlement, Defendant shall pay a total sum of $95,000 (the "Gross Settlement Fund") in full settlement of all claims alleged in the Action. ***Under no circumstances shall any portion of the Gross Settlement Amount revert to Defendant.*** (SA § II.A.13; SA § II.B.1.)

After deductions for: (a) the Court-approved Attorneys' fees and Costs to Class Counsel; (b) the Court-approved fees and costs of the Settlement Administrator; and (c) the Court-approved Enhancement Payment to Plaintiff, the resulting "Net Settlement Fund" will be distributed to the Settlement Class Members by way of their "Individual Settlement Payment."  The Individual Settlement Payments will be calculated by dividing the Net Settlement Fund by the number of Settlement Class Members.  (SA § II.B.1.)

The Settlement Administrator shall issue Individual Settlement Payments no later than fifteen (15) business days after the Settlement Effective Date.[4]  Any checks from the distribution that are not cashed within one-hundred-eighty (180) calendar days from the date of the mailing of the checks shall be cancelled and said cancellation shall not affect the validity of the Release of claims provided for herein and the Settlement Class Member shall be deemed to, nevertheless, be

---

[4] "Settlement Effective Date" means the date of final approval if no objections are filed to the settlement and Plaintiff and Class Counsel do not appeal any portion of the Court's final approval order.  If objections are filed and overruled, and no appeal is taken of the final approval order, then the Settlement Effective Date shall be forty-five (45) days after the Court enters final approval.  If an appeal is taken from the Court's overruling of objections to the settlement, then the Settlement Effective Date shall be twenty (20) days after the appeal is withdrawn or after an appellate decision affirming the final approval decision becomes final. (SA § II.A.23.)

bound by the Release of claims provided herein.  (SA § II.B.2.)

Not later than two hundred (200) calendar days from the date of mailing of the checks, any unclaimed portion will be allocated to the California State Controller's Office Unclaimed Property Program with the identity of the recipient of the distribution check to whom the funds belong.  (SA § II.B.2.)

## IV.    NOTICE TO THE SETTLEMENT CLASS HAS BEEN SUCCESSFULLY COMPLETED

Due process requires that notice be provided by the best reasonable method available.  See Eisen v. Carlisle & Jacqueline, 417 U.S. 156, 173 (1974) ("Individual notice must be sent to all class members whose names and addresses may be ascertained through reasonable effort.").  "Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (quoting Mendoza v. United States, 623 F.2d 1338, 1352 (9th Cir. 1980)).

The notice plan that was approved by the Court in its Order Granting Preliminary Approval [Dkt. No. 18] has been successfully completed.  (See Kincannon Decl. ¶¶ 3-8.)  The Parties agree that because speaking, reading, and writing in English is a job requirement for the Class as their jobs required direct client interaction, no translation of the Class Notice is necessary.  (SA § II.D.4.)

On April 9, 2021, Simpluris received the Court-approved Notice Packet from Plaintiff's Counsel.  The Class Notice advised Class Members of their right to opt out from the Settlement, object to the Settlement, or do nothing, and the implications of each such action.  The Class Notice advised Class Members of applicable deadlines and other events, including the Final Approval Hearing, and how Class Members could obtain additional information. (Kincannon Decl. ¶ 4, Exhibit A (Class Notice).)

On May 4, 2021, Counsel for Defendant provided Simpluris with a mailing list containing the name, last known address, Social Security Number, and pertinent employment information during the Class Period for the Class Members. The Class List contained data for 465 unique Class Members.  (Id. ¶ 5.)

The mailing addresses contained in the Class List were processed and updated utilizing the National Change of Address Database ("NCOA") maintained by the U.S. Postal Service.  The NCOA contains changes of address filed with the U.S. Postal Service.  In the event that any individual had filed a U.S. Postal Service change of address request, the address listed with the NCOA was utilized in connection with the mailing of the Notice Packets.  (Id. ¶ 6.)

On May 11, 2021, after updating the mailing addresses through the NCOA, Notice Packets were mailed via First Class Mail to 465 Class Members contained in the Class List.  (Id. ¶ 7.)

39 Notice Packets were returned by the post office.  For those without forwarding addresses, Simpluris attempted to find a forwarding address using Accurint, a reputable research tool owned by Lexis-Nexis.  Simpluris used the Class Member's name and previous address to locate a current address. Altogether, Simpluris re-mailed 34 Notice Packets to either; a new forwarding address provided by the Post Office, a newfound address using Accurint, or a forwarding address provided by the Class.  Ultimately, 5 Notice Packets remained undeliverable because Simpluris was unable to find a deliverable address.  (Id. ¶ 8.)

## V.    NOTICE CLASS PARTICIPATION: NO REQUESTS FOR EXCLUSION & NO OBJECTIONS

As a result of the notice process, which included a detailed and simple-to-read Class Notice and a toll-free number for Class Members to call with questions

1  regarding the Settlement, there has been ***only one request for exclusion and no***

2  ***objections made to the Settlement***.  (Id. ¶ 9.)

3         The lack of any requests for exclusion or any objections makes it clear that

4  the Settlement has been embraced by the Class as one which is fair, adequate and

5  reasonable, and one which should be granted final approval at this time.

6  **VI.    THE SETTLEMENT WARRANTS FINAL APPROVAL UNDER**

7  **RULE 23**

8         Federal law strongly encourages settlements in the context of class actions.

9  See, e.g., Franklin v. Kaypro Corp., 884 F.2d 1222, 1229 (9th Cir. 1989)

10  ("[O]verriding public interest in settling and quieting litigation" is "particularly

11  true in class action suits.") (quotations omitted).  The Parties believe that their best

12  interests are served by entering into the Settlement Agreement.

13         Federal Rule of Civil Procedure 23(e) provides that any compromise of a

14  class action must receive Court approval.  "Approval under 23(e) involves a two-

15  step process in which the Court first determines whether a proposed class action

16  settlement deserves preliminary approval and then, after notice is given to the

17  Class Members, whether final approval is warranted."  Nat'l Rural Telecomms.

18  Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004).

19         In order to approve the Settlement, this Court must conclude that the

20  Settlement is "fair, adequate and reasonable," and is the product of arm's-length

21  and informed negotiations.  See In re Heritage Bond Litig., 546 F.3d 667, 674 (9th

22  Cir. 2008).  Moreover, "a presumption of fairness arises where: (1) counsel is

23  experienced in similar litigation; (2) settlement was reached through arm's length

24  negotiations; (3) investigation and discovery are sufficient to allow counsel and the

25  court to act intelligently."  In re Heritage Bond Litig., Nos. 02-ML-1475 DT, CV

26  01-5752 DT (RCx), 2005 WL 1594403, at *2 (C.D. Cal. June 10, 2005).  "In

27  deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong

28

-9-

judicial policy that favors settlements, particularly where complex class action litigation is concerned.  Id. (citing Class Plaintiffs v. City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992)).

### A. **The Settlement Is Fair, Adequate, And Reasonable**

To receive judicial approval, a proposed class action settlement must be "fair, reasonable, and adequate."  See F.R.C.P. 23(e)(2).  In making this determination, the Court may consider: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the settlement (which is evaluated at the final approval hearing, after class members have received notice).  Rodriguez v. West Publishing Corp., 563 F.3d 948, 963 (9th Cir. 2003).  Plaintiff addresses each relevant factor below.

### 1. **The Strength Of Plaintiff's Case**

The procurement of background reports for employment purposes is subject to strict disclosure requirements under federal law pursuant to the FCRA and under California law pursuant to the ICRAA and CCRAA.  Among other things, an employer may not procure a background report concerning a job applicant unless a "clear and conspicuous" disclosure is made in a stand-alone document that "consists solely of the disclosure" informing the applicant that a report may be obtained for employment purposes.

More specifically, 15 U.S.C. § 1681b(b)(2)(A)(i) provides that an employer "may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless –

(i)     a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured,

-10-

1    **in a document that consists solely of the disclosure**, that a consumer

2    report may be obtained for employment purposes; and

3    (ii)   the consumer has authorized in writing (which authorization may be made

4           on the document referred to in clause (i)) the procurement of the report by

5           that person." (Emphasis added.)

6    Plaintiff's Complaint alleges that Defendant violated these sections when it

7    failed to provide Plaintiff and other putative class members with a clear and

8    conspicuous disclosure in writing in a document that consists solely of the

9    disclosure that a consumer report may be obtained for employment purposes.

10   (Azadian Decl. ¶¶ 13-15.)

11   The Ninth Circuit has repeatedly held that failure to provide a clear and

12   conspicuous disclosure consisting **solely** of the disclosure that a consumer report

13   may be obtained for employment purposes is a clear violation of the FCRA.  See

14   e.g., Syed v. M-I, Ltd. Liab. Co., 853 F.3d 492, 504 (9th Cir. 2017) (Employer

15   violated FCRA when it procured a job applicant's consumer report after including

16   a liability waiver in the same document as the statutorily mandated disclosure.

17   Given the clear statutory language that the disclosure document had to consist

18   "solely" of the disclosure, the employer's violation of the FCRA was willful as a

19   matter of law), Gilberg v. Cal. Check Cashing Stores, Ltd. Liab. Co., 913 F.3d

20   1169, 1176 (9th Cir. 2019) (An employer violated both FCRA and ICRAA's

21   standalone requirement because the FCRA disclosure also contained state law

22   disclosures, including a disclosure related to California, Minnesota, Oklahoma,

23   and New York state laws).

24   Here, Plaintiff has alleged Defendant's preauthorization is embedded in a

25   two-page document that contains a host of other unrelated authorizations,

26   disclosures, and disclaimers, including: the same state law disclaimers at issue in

27   Gilberg, the requirement to provided sufficient documentation to establish

28

-11-

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  eligibility to work in the United States, an agreement to sign a non-solicitation

2  agreement, an agreement to sign a non-disclosure agreement, an "at-will"

3  employment disclaimer, drug-screening information, and a consent to send the

4  employee's information to affiliates and agents.  (Azadian Decl. ¶¶ 16-17.)

5       In a FCRA case, a prevailing plaintiff who demonstrates that the defendant

6  acted willfully will receive statutory damages of between $100 and $1,000.  15

7  U.S.C. § 1681n(a)(1)(A).  Plaintiff and the class members are also entitled to

8  recover their costs and attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3).

9  Plaintiff's remaining claims under ICRAA and CCRA do not provide for

10  statutory damages and, instead, require proof of actual damages.  <u>See</u> Cal. Civ.

11  Code Section 1786.50 (IRRA); <u>see also</u> Cal. Civ. Code Sections 1785.31

12  (CCRA).  Similarly, Plaintiff's UCL claim is limited to restitutionary and

13  injunctive relief.  <u>See</u> <u>Korea Supply Co. v. Lockheed Martin Corp.</u>, 29 Cal. 4th

14  1134, 1148-51 (2003); <u>see also</u> <u>Cortez v. Purolator Air Filtration Products Co.</u>, 23

15  Cal. 4th 163, 173 (2000).  (Azadian Decl. ¶ 18.)

16       In the instant action, the difficulty centered around proving a "willful"

17  violation required for statutory damages under the FCRA.  In <u>Syed</u>, the Ninth

18  Circuit found that the defendant's violation of the FCRA was willful as a matter

19  of law because:  "15 U.S.C. § 1681b(b)(2)(A) unambiguously forecloses the

20  inclusion of a liability waiver in a disclosure document.  Thus, we need not

21  consider [Defendant's] subjective interpretation of the FCRA in determining

22  whether it acted in reckless disregard of the statutory language, and therefore

23  willfully. . . .  [Defendant] ran an unjustifiably high risk of violating the statute.

24  In other words, [Defendant] acted in reckless disregard of statutory duty.  Its

25  violation of the FCRA was therefore willful under 15 U.S.C. § 1681n."  <u>Syed</u>,

26  853 F.3d at 505-06 (internal quotations/citations omitted).  (Azadian Decl. ¶ 19.)

27       However, here, Defendant has provided evidence supporting its defense

28

-12-

1  that any violation of the FCRA's disclosure requirements was not willful and that
2  Defendant was diligent in seeking to comply with all legal requirements.  In this
3  regard, Defendant has declared that the error with the A-Check documents was
4  caused by a technical issue that resulted in the Class not receiving the appropriate
5  link to the correct and compliant disclosures.  It was not until Plaintiff made a
6  request for records in September 2020 and Defendant reached out to the credit
7  reporting agency to obtain copies of the background check documents that
8  Defendant believed were provided to Plaintiff (and which Defendant did not have
9  direct access to) that Defendant learned that its CRA had not been providing such
10  documents to applicants like Plaintiff who had received job offers from
11  Defendant, despite the fact that Defendant had contracted with the CRA to
12  provide all necessary background check documents, had reviewed and approved
13  the use of the CRA's background check document, and understood and believed
14  that applicants would be provided a link allowing them to access, review, and
15  acknowledge the background check documents electronically.  Upon discovering
16  that applicants had not been receiving background check documents, Defendant
17  immediately instructed the CRA to fix the issue and made sure that background
18  check documents are provided to all applicants receiving a conditional offer of
19  employment going forward.  (Azadian Decl. ¶ 20.)  Additionally, Defendant has
20  presented evidence that outside of this limited period, applicants were provided
21  with requisite background check documents.  Given these facts, the Court may
22  find that Defendant's alleged violation was not willful or that any award of
23  damages should be on the low-end of the statutory damages for willful violations,
24  which are between $100 and $1,000.  15 U.S.C. § 1681n(a)(1)(A).  (Azadian
25  Decl. ¶ 20.)
26        Defendant also argued that, pursuant to 15 U.S.C. section 1681p, a two-
27  year statute of limitation applies to FCRA claims from the "date of discovery by
28

-13-

the plaintiff of the violation that is the basis for such liability."  The two-year statute of limitations begins when a "reasonably diligent plaintiff would have discovered facts constituting the violation."  <u>Drew v. Equifax Info. Servs.</u>, 690 F.3d 1100, 1110 (9th Cir. 2012); <u>Grigoryan v. Experian Info. Solutions</u>, 84 F. Supp. 3d 1044, 1058 (C.D. Cal. 2014).  The term "discovery" here "encompasses not only those facts the plaintiff actually knew, but also those facts a reasonable diligent plaintiff would have known."  <u>Merck v. Reynolds</u>, 559 U.S. 633, 130 S. Ct. 1784, 1795-96 (2010).  In the present action, Defendant argued that offers of employment to applicants are conditioned on a successful background check, and the application utilized with Plaintiff and other Class Members also memorialize that job offers are contingent on the running of background checks.  Therefore, Defendant contends that at the time that an applicant is hired, they have actual or constructive knowledge that a background report has been procured, subjecting applicants to the two-year as opposed to the five-year statute of limitations.  See <u>Ruiz v. Shamrock Foods Co.</u>, 2018 U.S. Dist. LEXIS 148929, fn. 6 (Cal. C.D. Aug. 22, 2018) ("Even if it were found that Plaintiffs did not have such actual knowledge, they would have constructive knowledge since a reasonably diligent plaintiff would have determined that the background reports were completed, given that disclosure in their offer letters and that they knew they had the right to request a copy of the reports.")  Given these facts, Defendant contends that the Court may find that a sizable portion of Class Members' claims are barred by the two-year statute of limitations.  (Azadian Decl. ¶ 21.)

### 2. **Risk, Expense, And Complexity Of Further Litigation**

Class Counsel has conducted a thorough investigation into the facts of the class action, diligently evaluated the Class Members' claims against Defendant, investigated the facts relating to the claims alleged in the Action and Defendant's defenses.  (Azadian Decl. ¶ 22.)

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Following the Early Neutral Evaluation Conference, Class Counsel obtained confirmatory discovery in the form of a declaration under penalty of perjury from Defendant's Chief Human Resources Officer and confirmed the key information that was relied upon for purposes of the Early Neutral Evaluation Conference, including:

1. The three different Consumer Reporting Agencies ("CRAs") used by Defendant to conduct preemployment background checks during the Class Period and the number of people who had their background checks completed by each CRA as follows.

    a. Transunion: October 2015 - December 2018; 274 individuals;

    b. Experian: December 2018 - May 2019; 34 individuals; and

    c. A-Check Global: May 2019 - December 21, 2020; 158 individuals.

2. A true and correct copy of the different disclosure and authorization forms used by Defendant during the Class Period.

3. Facts related to Defendant's understanding and expectation that beginning in May 2019, applicants who received conditional offers of employment would be provided a link by A-Check allowing the applicants to access, review, and acknowledge the background check documents electronically.

4. Facts related to Defendant's expectation and understanding that background check reports would be run only after the applicant had electronically acknowledged the background check documents.

5. Unbeknownst to Defendant, due to a technical issue, the system was not set up for A-Check to provide applicants who received conditional offers of employment from Defendant with the link to access the background check documents.

6. It was not until Plaintiff made a request for records in September 2020 and Defendant reached out to A-Check to obtain copies of the background

-15-

check documents that Defendant believed were provided to Plaintiff (and which Defendant did not have direct access to) that Defendant learned that A-Check had not been providing such documents to applicants like Plaintiff who had received job offers from Defendant.

7. Upon discovering that applicants had not been receiving background check documents, Defendant immediately instructed A-Check to fix the issue and made sure that background check documents are provided to all applicants receiving a conditional offer of employment going forward.

8. As a result of the technical issue described above, and contrary to Defendant's expectation and understanding about the services it had signed up for with A-Check, no disclosures or other background check documents were provided to applicants who received conditional job offers from approximately May 2019 to September 22, 2020.

9. A-Check has confirmed that as of September 22, 2020, any applicant who received a conditional job offer has been provided with the requisite disclosures and other background check documents.

10. Defendant now has the ability to directly access documents provided by A-Check to applicants to ensure they are provided with all necessary documents.

(Azadian Decl. ¶ 7.)

Based on the foregoing data and their own independent investigation and evaluation, Class Counsel believes that the settlement with Defendant for the consideration and on the terms set forth in the Settlement Agreement is fair, reasonable, and adequate and is in the best interest of the class in light of all known facts and circumstances. (Id. ¶ 22.)

These risks included: the risk of significant delay; risks associated with class certification; the defense asserted by Defendant that any error in the background

-16-

1  check disclosure forms was not willful and that Defendant took steps to ensure the

2  forms it used complied with applicable law; risks that a sizable portion of Class

3  Members' claims are barred by the statutes of limitations, insofar as a two year

4  statute of limitation applies from the date of discovery by a plaintiff of the

5  violation that is the basis for claims under the FCRA, ICRAA and CCRAA, and

6  numerous potential appellate issues. (Id. ¶ 23.)

7      Although the Parties engaged in significant informal discovery,

8  investigation, and class-wide data analysis, they had not completed formal

9  discovery. (Id. ¶ 24.) Plaintiff intended to depose Defendant's Rule 30(b)(6)

10 witnesses, and Defendant planned to depose Plaintiff, and both sides intended to

11 depose the Credit Reporting Agencies used by Defendant during the Class Period.

12 (Id.) Defendant also planned to move for summary adjudication on all or some of

13 Plaintiff's claims. (Id.) Preparation for class certification and trial remained for

14 the Parties, as well as the prospect of potential appeals. (Id.) Thus, the Parties

15 would incur considerably more attorneys' fees and costs through trial. This

16 settlement avoids those risks and accompanying expense. See In re Portal

17 Software, Inc. Sec. Litig., No. C-03-5138 VRW, 2007 WL 4171201 at *3 (N.D.

18 Cal. 2007) ("inherent risks of proceeding to summary judgment, trial and appeal

19 also support the settlement"). Thus, this factor favors final approval.

20         ### 3. Risk Of Obtaining And Maintaining Class Action Status

21     Plaintiff has not yet moved for class certification. Absent settlement, there

22 is a risk of not having a certified class at the time of trial and that the putative class

23 members would not recover anything. (Azadian Decl. ¶ 25.) Given the use of

24 three separate Credit Reporting Agencies during the class period and two separate

25 disclosure forms, and in light of Defendant's assertion of an affirmative statute of

26 limitations defense with respect to a sizable portion of the Class, Plaintiff believes

27

28

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  there is a cognizable risk associated with certifying the Class.  Thus, this factor
2  also supports final approval.  (Id.)

3  ### 4.  **Settlement Amount Provides Realistic Value For Claims**

4       The proposed settlement provides a substantial monetary recovery for Class
5  Members in the face of disputed claims.  The potential damages in this action are
6  approximately $44,600 at the low range for a willful violation under the FCRA
7  ($100 per willful violation x 446 Class Members) and $446,000 at the maximum
8  range for a willful violation under the FCRA ($1,000 x 446 Class Members), not
9  including mandatory attorneys' fees and costs).  15 U.S.C. § 1681n(a)(1)(A) (a
10 prevailing plaintiff who demonstrates that the defendant acted willfully will
11 receive statutory damages of between $100 and $1,000).  Thus, the $95,000 Gross
12 Settlement Amount represents approximately 213% of reasonably recoverable
13 potential damages at the low range for a willful violation under the FCRA and
14 approximately 21.3% of reasonably recoverable potential damages at the
15 maximum amount recoverable for a willful violation under the FCRA.  (Azadian
16 Decl. ¶ 26.)

17      The percentage of liability exposure recovered in this case exceeds
18 percentages routinely approved by courts.  See Rhom v. Thumbtack, Inc., 2017
19 WL 4642409 (N.D. Cal. Oct. 17, 2017)(granting final approval of a claims made
20 settlement where 66,676 class members shared in a $225,000 settlement,
21 amounting to $3.30 gross per class member); see also In re Uber FCRA Litig.,
22 2017 WL 2806698 (N.D. Cal. June 29, 2017) (granting preliminary approval of a
23 claims made settlement where 1,025,954 class members shared in a $7.5 million
24 settlement or $7.31 gross per class member); Aceves v. AutoZone Inc., Case No.
25 5:14-CV-02032, ECF No. 58 (C.D. Cal. Nov. 18, 2016) (granting final approval
26 where 206,650 class members shared in a $5,700,000 settlement or $27.58 gross
27 and approximately $20 net per class member); Feist v. Petco Animal Supplies,

28

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

1  Inc., Case No. 3:16-cv-01369-H-DHB ECF No. 48 (S.D. Cal. 2018) (granting final

2  approval; 37,279 class members shared in a $1,200,000 settlement or $32 gross

3  and approximately $20 net per class member); Viceral v. Mistras Grp., Inc., No.

4  15-cv-02198-EMC, 2016 WL 5907869 (N.D. Cal. 2016) (approving class action

5  settlement amounting to 8.1% of potential damages); Dunleavy v. Nadler, 213 F.3d

6  454, 459 (9th Cir. 2000) (approving settlement which represented "roughly one-

7  sixth of the potential recovery"); Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.,

8  221 F.R.D. 523, 527 (C.D. Cal. 2004) ("it is well-settled law that a proposed

9  settlement may be acceptable even though it amounts to only a fraction of the

10  potential recovery that might be available to the class members at trial")

11       Given the risks involved, the proposed settlement is well within the range of

12  reasonableness.

13       **5.  <u>Class Counsel Has Extensive Experience In Class Actions And</u>**

14            **<u>Similar Cases.</u>**

15       Class Counsel has extensive experience in class actions and similar cases

16  and believes that the proposed Settlement is adequate, reasonable, fair, and in the

17  best interests of all class members.  Class Counsel has represented both plaintiffs

18  and defendants in employment-related class actions and other complex matters.

19  (Azadian Decl. ¶¶ 27-29.)  Class Counsel has never been found inadequate to

20  serve as class counsel and has been approved as class counsel in: Corona v. DS

21  Services of America, Inc., Los Angeles Superior Court Case No. 19STCV03835;

22  Celiz v. Bottling Group, LLC, Los Angeles Superior Court Case No. BC678071;

23  Gretler v. Kaiser Foundation Health Plan, Inc., CD Cal Case No. 18-cv-02175 AG;

24  Castaneda v. SMCP USA, Inc., Los Angeles Superior Court Case No. BC687413;

25  Dieda v. Rodra, Inc., Los Angeles Superior Court Case No. BC677449; Martin v.

26  Starbucks Corporation., Los Angeles Superior Court Case No. BC582335;

27  Eduarado Gaa v. Intercare Holdings Inc., Los Angeles Superior Court Case No.

28

**PLAINTIFF'S UNOPPOSED NOTICE OF MOTION AND MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT THEREOF**

BC488375; and <u>Luis Irizarry v. Healthcare Services Group, Inc.</u>, Los Angeles Superior Court Case No. BC489570.  Class Counsel is qualified to evaluate the risks and benefits of both litigation and settlement in this matter, and recommends this Settlement as fair and reasonable to the Class.  (Azadian Decl. ¶ 30.)

### 6.  <u>The Reaction Of The Class Members To The Settlement</u>

A Court may infer that a class action settlement is fair, adequate, and reasonable when few class members object.  <u>See Marshall v. Holiday Magic, Inc.</u>, 550 F.2d 1173, 1178 (9th Cir. 1977).  "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the class members."  <u>Nat'l Rural Telecomm. Coop.</u>, <u>supra</u>, 221 F.R.D. at 529.

Here, the response to the Settlement has been overwhelmingly positive.  Not a single Class Member has filed an objection to the proposed settlement or any portion thereof.  Only one Class Member has requested exclusions from the Settlement, which represents 0.22% of the Settlement Class.  (Kincannon Decl. ¶¶ 9-10.)

### VII.  <u>CONCLUSION</u>

In its April 9, 2021 Order granting preliminary approval, this Court certified the Classes for settlement purposes.  [Dkt. No. 18.]  As circumstances have not changed, the Settlement has been embraced by the Settlement Class, and for the reasons set forth above and in Plaintiff's Motion for Preliminary Approval [Dkt. No. 15], Plaintiff request that the Court finally certify the Class for settlement purposes.  <u>See Schiller v. David's Bridal, Inc.</u>, No. 10-cv-616-AWI, 2011 WL 2117001, at *8 (E.D. Cal. 2012) ("As initially determined in the Court's preliminary approval order and as set forth above, the Rule 23(a) requirements for class certification have been satisfied.").

For the reasons set forth herein, Plaintiff respectfully requests that the

Court grant this Motion and enter the [Proposed] Order granting final approval of the Settlement.

Dated: June 25, 2021                    Respectfully submitted,
                                        AZADIAN LAW GROUP, PC


                                        By: /s/ George S. Azadian
                                        GEORGE S. AZADIAN
                                        Attorneys for Plaintiff,
                                        ADRIANA SUAREZ TAPIA and
                                        the Proposed Class